Clare J. Hoyt, J.
Plaintiffs have brought an action under section 51 of the General Municipal Law to enjoin the Village of Croton-on-Hudson from constructing a water storage tank upon premises formerly owned by the plaintiff Mitchell and acquired by the defendant village in a condemnation proceeding on the ground that the approval of the New York State Water Resources Commission is a necessary prerequisite to such construction.
The defendant village acquires its water from a series of wells in the bed of the Croton River. The water is pumped from these wells into a lower reservoir which supplies the distribution system that serves the consumers in the lower elevations of the village. There is a higher level reservoir into which water is pumped from the lower reservoir which higher reservoir furnishes water to the consumers in the high-level system. Water from this high-level system can flow back to furnish water in the low-level system when the need arises.
The wells in the Croton River became covered with silt and as the water level fell in the Croton River, whose chief source of supply was seepage from the Croton Dam when water was *911 not funning over the spillway, the production from the wells decreased because of the deposits on them and the absence of pressure at the well heads due to lack of water covering them. The village in the 1950’s constructed temporary dams in the river to insure water being impounded to cover the well heads. These temporary dams often washed out and the village was advised by its consultants to erect a permanent dam in the river to accomplish the objectives achieved by the temporary dams.
In 1960 application was made by the village to the Water Resources Commission, a hearing was held and the commission on May 3, 1960 rendered its decision approving the application. The permanent dam was constructed pursuant to this permission and the commission has approved the installation effected pursuant to its permission.
The dam was erected at the site of the temporary dams, is of no greater length than the temporary dams and serves to restore the pumping system to the capacity they produced when originally installed.
Both prior and subsequent to the application for the erection of the permanent dam the village’s water system has been under constant consideration. This study has been concerned with both supply and storage and distribution. A new source of water from wells in a different area of the village has been considered.
While the question of supply has been considered, attention has been given to the storage and distribution system. The lower reservoir has required extensive repairs and concern has been expressed as to its continued deterioration. Because of the limited storage capacity of the reservoirs, the village’s consultant recommended over the years increased storage facilities. This recommendation was prompted by the need for emergency storage capacity for fire fighting purposes or to protect against a water main leak or a power failure at the pumping station; extreme dry weather daytime demand; and failure of the lower level reservoir.
The permanent dam authorized in 1960 and the contemplated storage facilities were not related. They were merely two of the problems in furnishing an adequate water supply that faced the village. Other problems remain to be solved. In 1960 when the dam was authorized, the village had under consideration location of a storage tank at a place other than that now chosen.
In 1962 the village determined to erect a storage tank on premises of the plaintiff Mitchell adjacent to its existing lower *912 level reservoir. It will .supplement the existing low-level tank and take its place should the existing reservoir become inoperative.
In 1963 the village proceeding under article 14 of the Village Law commenced a proceeding to condemn about one-half acre of plaintiff Mitchell’s property for the construction of the reservoir. An order was entered vesting title in the village and plaintiff Mitchell thereafter .stipulated the settlement of the condemnation proceeding and agreed to convey the premises to the village for $8,500. Plaintiff Mitchell consented to the entry of an order vesting title in the village on his failure to convey and upon his failure to convey an order was entered.
Thereafter the village adopted a bond resolution authorizing the issuance of $200,000 in bonds for the acquisition of the land and the erection of the storage tank.
The complaint seeks relief on the grounds that the construction of the storage tank, per se, requires approval of the Water Resources Commission and that the proposed reservoir and the approved dam are part of an integral program, that the reservoir could not be utilized except for the dam improvements made in 1960, that the use of the storage tank will involve the taking of an additional water supply from an existing approved source, which requires the consent of the Water Resources Commission for either condemnation or the construction of the reservoir.
The plaintiff no longer contends that the erection of the reservoir in and of itself requires approval by the Water Resources Commission. No source or supply of water is involved in the land acquisition, it merely will .serve as the location for the new reservoir.
The defendants, in addition to asserting that approval of the Water Resources Commission is not required by reason of the nature and proposed use of the reservoir, raise several other defenses. They claim that plaintiff Mitchell is barred from asserting this claim since he was a party to the condemnation proceeding and agreed to the taking of his property and that neither plaintiff commenced any action or proceeding within 20 days of the publication of the notice of the bond resolution as provided in section 81.00 of the Local Finance Law.
The determination by this court that the prior approval of the Water Resources Commission was and is not needed for the condemnation of the land and the erection of the reservoir makes unnecessary the disposition of these defenses.
¡Subdivision (1) of section 450 of the Conservation Law states in part that without approval of the Water Resources Commis *913 sion one may not “ acquire or take a water supply or an additional water supply from an existing approved source ” (subd. [1], par. [a]), or “ take or condemn lands for any new or additional sources of water supply or for the utilization of such supplies” (subd. [1], par. [b]).
The reservoir will draw water from the present village supply and it will not result in an increase in the supply so taken. The fact that within a given period more water may be pumped into the storage facilities as a safety factor for future use will not result in more water being drawn from the supply after the reservoir is filled. The requirements of the statute are to insure that an existing approved supply will not be overburdened or used to an extent gr eater than that authorized or contemplated at the time of the approval.
The village was not unmindful of the limitations imposed by section 450 of the Conservation Law. Prior to the commencement of the condemnation proceeding the Village Attorney requested from the Water Resources Commission an opinion as to whether approval of the commission was necessary. The Executive Engineer of said commission replied: “ that the construction of a distribution reservoir iby the Village of Croton-onHudson is not a matter requiring the prior consent and approval of the Commission or the making and filing of a Water Supply application with the Commission under the provisions of Section 450 of the Conservation Law so long as the acquisition or taking of a water supply is not involved in connection with such project.”
In February of 1964 plaintiffs’ attorney made inquiry of the Water Resources Commission asking: “If the Village of
Croton were to condemn the property and construct thereon an additional tank with capacity for storing 1,500,000 gallons of water would approval of the Water Resources Commission be required? Would approval of this condemnation or construction be required if no alterations were made in the present system and the tank or reservoir were built for the purpose of storing additional water drawn from the presently authorized sources ? ”
Under date of February 20, 1964 a reply was received from the Assistant Engineer of the Water Resources Commission: “ The approval of the Commission is not required for the condemnation of land and the construction of a storage tank unless this tank were an integral part of a project which was presented to the Commission. Under the conditions outlined in your letter, it does not appear that the approval of the Commission would be required as the tank will only provide addi *914 tional storage for water taken from the previously approved sources of supply.”
The court may and does accord consideration to the practical construction placed upon this statute by the administrative body charged with its administration and enforcement (see 1 N. T. Jur., Administrative Law, §§ 89-90).
Plaintiff has not shown, and indeed the contrary appears, that the proposed reservoir is an integral part of the dam project approved in 1960.
The case at bar is readily distinguishable from the unreported case, Village of Walden v. Borland (Supreme Ct., Orange County) in which Mr. Justice Coyle required approval by the Water Resources Commission. That case involved an expansion of the municipality’s water system, financed in part by Federal funds, involved a project for the erection of a new standpipe independent of any existing storage facilities, an expanded distribution system and a new source of water to insure an additional water supply.
Defendants’ water storage tank will not in any way create a new water supply or enlarge upon an existing supply. In the words of the commission itself “ the tank provides additional storage for water taken from previously approved sources of supply. ’ ’